# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED ACCESS TECHNOLOGIES, LLC, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> AT&T CORP., AT&T SERVICES, INC., and : <br> SBC INTERNET SERVICES, INC. : <br> : <br> Defendants. : | C.A. No. 11-338-LPS |
| UNITED ACCESS TECHNOLOGIES, LLC, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> CENTURYTEL BROADBAND SERVICES, : <br> LLC and QWEST CORPORATION, : <br> : <br> Defendants. : | C.A. No. 11-339-LPS |
| UNITED ACCESS TECHNOLOGIES, LLC, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> FRONTIER COMMUNICATIONS : <br> CORPORATION, : <br> : <br> Defendant. : | C.A. No. 11-341-LPS |

Stamatios Stamoulis and Richard C. Weinblatt, STAMOULIS & WEINBLATT LLC, Wilmington, DE
Steven Callahan, Martin Robson, Anthony M. Garza, and C. Luke Nelson, CHARHON CALLAHAN ROBSON & GARZA, Dallas, TX
    Attorneys for Plaintiff.

Benjamin J. Schladweiler, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE
Bryant C. Boren, Jr., Jon V. Swenson, Elizabeth Boggs, Jason German, and Jay B. Schiller, BAKER BOTTS LLP, Palo Alto, CA

    Attorneys for Defendants AT&T Corp., AT&T Services, Inc., and SBC Internet Services, LLC.


Richard L. Renck, DUANE MORRIS LLP, Wilmington, DE
Matthew C. Gaudet, Alison H. Hutton, and Jennifer H. Forte, DUANE MORRIS LLP, Atlanta, GA

    Attorneys for Defendants CenturyTel Broadband Services, LLC and Qwest Corporation.


Phillip A. Rovner and Jonathan A. Choa, POTTER ANDERSON & CORROON, LLP, Wilmington, DE
Timothy R. Shannon, Taylor R. Neff, and Seth S. Coburn, VERRILL DANA, LLP, Portland, ME

    Attorneys for Defendant Frontier Communications Corporation.

## **MEMORANDUM OPINION**

August 22, 2017
Wilmington, Delaware

**STARK, U.S. District Judge:**

On April 15, 2011, Plaintiff United Access Technologies LLC ("United Access") filed suit against Defendants AT&T Corp., AT&T Services, Inc., and SBC Internet Services, LLC; CenturyTel Broadband Services, LLC and Qwest Corporation; and Frontier Communications Corporation (collectively, "Defendants"), alleging infringement of U.S. Patent Nos. 5,844,596, 6,243,446, and 6,542,585,[1] which describe and claim systems for transmitting data to residences or businesses over existing telephone wiring without interfering with telephone signals or the switching equipment that is part of the public switched telephone network.

The Court issued a claim construction opinion on November 4, 2016. (*See* C.A. No. 11-339-LPS D.I. 178)[2] In light of that claim construction, the parties jointly requested that Defendants be allowed to file an early motion for summary judgment of non-infringement. (*See* D.I. 184) Presently before the Court is that motion for summary judgment of non-infringement. The Court heard oral argument on February 27, 2017. (*See* D.I. 200 ("Tr."))

For the reasons stated below, the Court will grant Defendants' motion for summary judgment of non-infringement.

## I. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of

---

[1] United Access asserts claim 61 of the '596 patent, claims 1-5 of the '446 patent, and claims 1, 2, 4, 8, and 9 of the '585 patent. (*See* D.I. 168 at 1)

[2] Unless otherwise noted, the references to the docket are to C.A. No. 11-339-LPS.

1

demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## II. DISCUSSION

Defendants move for summary judgment on the grounds that (1) the remote-terminal embodiments of the accused systems do not literally meet the "signal interface" limitation and (2) predicating infringement of that limitation on the doctrine of equivalents would result in claim vitiation.[3]

### A. Literal Infringement

The present dispute concerns the signal interface of the asserted claims. The Court construed "signal interface" to mean "a device interposed on the opposite end (i.e., the local side) of the public trunk line (i.e., the telephone lines comprising the public telephone network) from the telephone exchange that performs the recited functions of the incorporated circuitry." (D.I. 178 at 6) The Court "conclude[d] that each [claim] includes a limitation that the signal interface

---

[3]Defendants also move for summary judgment of non-infringement for the control-office embodiments, which United Access does not oppose. (*See* D.I. 190 at 13-14) Accordingly, the Court will grant summary judgment of non-infringement, both literally and by equivalents, with respect to these embodiments.

3

be located at the far end of the public trunk line, at the point where the line connects to the local telephone network." (*Id.* at 8) That point is "located at the intersection of the public telephone lines and the lines that run separately to particular structures." (*Id.*) Thus, with respect to whether the term includes a positional limitation, the Court agreed with Defendants that the signal interface "must be located at the boundary of the public and local networks." (*Id.*)

Defendants contend that summary judgment of non-infringement is warranted with respect to the remote-terminal embodiments because the signal interface of the accused systems is located within the public telephone network and, therefore, cannot satisfy the positional requirement of the signal interface. (*See* D.I. 186 at 9) United Access does not dispute the general configuration of the remote-terminal embodiments. (*See* D.I. 196 at 1) Rather, United Access essentially contends that there remains a series of claim construction disputes.

United Access first contends that the positional limitation of the signal interface term should not turn on the meaning of "public telephone network," which is part of the Court's claim construction. United Access suggests that the proper inquiry here is, instead, to determine where the local end of the public trunk line is located, and argues that the question should be answered without reference to the public telephone network. The problem with this contention is that the Court already rejected it during claim construction. At that time, United Access argued that the Court should not construe "public trunk line" (*see* D.I. 151 at 17) and that Defendants' proposed construction of that term was inconsistent with its correct meaning (*see* D.I. 166 at 8-9). The Court resolved the dispute against United Access, construing signal interface to incorporate Defendants' proposed construction of "public trunk line," that is "the telephone lines comprising the public telephone network." (D.I. 178 at 6) United Access presents no compelling reason to

4

revisit the previously-adopted construction. *See Sunovion Pharm., Inc. v. Actavis, Inc.*, 2014 WL 2531513, at *1-2 (D. Del. June 3, 2014).

United Access alternatively contends that, even accepting the Court's construction of "signal interface," there is a dispute about the meaning of "public telephone network" that still requires resolution. (*See* D.I. 199 at 1) (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)) United Access argues that ownership of the lines is not the proper criterion by which to distinguish between lines that are part of the public telephone network and those that are not. United Access does not propose any particular construction for these terms but contends that the specification treats certain lines, the "local loops" – which are undisputedly owned by telephone companies – as being part of the local network. Again, the Court previously considered this contention (*see* D.I. 171 at 6-7, 47-48) and, notwithstanding United Access' opposition, adopted Defendants' proposed construction. Thus, United Access does not present a genuine dispute about the meaning of "public telephone network," as the argument United Access raises about the import of "local loops" on the positional requirements of the signal interface has already been resolved in Defendants' favor.

Given that United Access does not dispute the factual issues relevant to the question of infringement (*see* D.I. 196 at 1), the Court determines that there is no genuine dispute that the signal interface in the remote-terminal embodiments does not sit at the boundary of the public telephone network and a local network, as required by the claims. On the record created by the parties, taking all of the evidence in the light most favorable to United Access and drawing all reasonable inferences in favor of United Access, no reasonable factfinder could find that Defendants' systems meet the positional requirement of the "signal interface," as construed by

the Court.

Defendants describe the remote-terminal systems as follows. A Digital Subscriber Loop Access Multiplexer ("DSLAM") – the accused signal interface in Defendants' systems – sits on the public telephone network between the central office and the customers. (*See* D.I. 187 at ¶ 11; D.I. 186 Ex. 1 at ¶ 11; Ex. 2 at ¶ 11) The DSLAM is a data aggregator that "accepts the data from upstream switching equipment and directs the data onto the twisted pair telephone wires serving particular subscribers." (D.I. 186 Ex. 2 at ¶ 7) At the DSLAM, the twisted pairs are bundled together into a thick cable and run to multiple serving terminals. (*See id.* at ¶¶ 8, 12) At the serving terminals, the cable is split, such that the twisted pair wires run separately to each residence or building. (*See id.*) The twisted pairs terminate at a Network Interface Device ("NID"), typically located at the side of a house or building. (*See id.* at ¶¶ 9, 12) Defendants identify the NID as "the point of demarcation between the public telephone network (*i.e.*, the telephone lines and other equipment owned by the telephone company) and the customer's internal private 'local network.'" (*Id.* at ¶ 9) Thus, according to Defendants, the DSLAM is located *within* the public telephone network, not at the local end of the public trunk line.

United Access does not dispute that this is the general configuration of the remote-terminal embodiments. Rather, United Access contends that a DSLAM sitting at the intersection of public telephone lines and the lines that run separately to individual structures meets the signal interface claim limitation. (*See* D.I. 190 at 11) United Access suggests that a DSLAM meets the positional limitation even if it is on the public telephone network, so long as it is located at the point at which the lines diverge to run into different buildings. (*See id.*) That argument, however, is not consistent with the Court's claim construction, which requires the signal

6

interface to be located on the local side of the public telephone network. United Access presents no evidence that the lines running to individual structures are part of the local network. None of the evidence cited by United Access raises a genuine dispute regarding whether the lines running to individual buildings are local. (*See* D.I. 190 at 11 n.3) (citing D.I. 190 Ex. E at 90:7-25, 91:15-23; Ex. H at 50:8-13; Ex. I at 6-8; Ex. J at 2; Ex. M at 122:5-8, 124:23-125:6, 126:10-15; D.I. 187 at ¶¶ 5-13; D.I. 186 Ex. 1 at ¶¶ 5-13; Ex. 2 at ¶¶ 5-13) Most of this evidence is silent on whether the lines are local, but the evidence that United Access directs the Court to that does address this point supports Defendants' position that these lines are part of the public telephone network, as they are upstream of the NIDs. (*See* D.I. 187 at ¶¶ 9, 12-13; D.I. 186 Ex. 1 at ¶¶ 9, 12-13; Ex. 2 at ¶¶ 9, 12-13) Indeed, United Access admits that "[t]he telephone company owns the . . . local loops" (D.I. 196 at 1), which makes them part of the public telephone network. Thus, there is no dispute that the DSLAMs are *not* located at the boundary of the local network and public telephone network, as required by the Court's construction of the claims.

Accordingly, the Court will grant summary judgment that the remote-terminal embodiments do not literally infringe the asserted patents.

### B.     Doctrine of Equivalents

Defendants also move for summary judgment of no infringement under the doctrine of equivalents. "To find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1346 (Fed. Cir. 2013) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). A determination of infringement under the doctrine of equivalents is a question of fact. *See Crown Packaging Tech., Inc. v. Rexam*

*Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). Therefore, summary judgment of no infringement by equivalency is warranted when no reasonable jury could find equivalency between the accused product and claimed invention. *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012).

"[T]he 'all elements' rule informs a doctrine of equivalents analysis by requiring that equivalence be assessed on a limitation-by-limitation basis, rather than from the perspective of the invention as a whole, and that no limitation be read completely out of the claim." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006). Accordingly, "the 'all elements' rule forecloses resort to the doctrine of equivalents because, on the facts or theories presented in a case, a limitation would be read completely out of the claim – i.e., the limitation would be effectively removed or 'vitiated.'" *Id.* "'Vitiation' is . . . a legal conclusion of a lack of equivalence based on the evidence presented and the theory of equivalence asserted." *Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1371 (Fed. Cir. 2015) (collecting cases). That is, "saying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016).

The parties agree that this motion concerns *only* the legal theory of equivalency that United Access presents and no factual issues about the differences between the claimed invention and accused products. For the purposes of the motion, the parties provisionally stipulated "that a reasonable jury could determine as a factual matter that the locations of the DSLAM in Defendants' accused instrumentalities are insubstantially different than that required by the

8

'signal interface' or 'telephone exchange' claim limitations." (D.I. 190 Ex. D at 2)[4]

Defendants contend that any application of the doctrine of equivalents would vitiate the Court's construction of "signal interface" by allowing that device to be located at a position that is not at the opposite end of the public telephone network from the telephone exchange. (*See* D.I. 186 at 12) According to Defendants, the patents emphasize the importance of having the signal interface in a position off the public network, a requirement captured by the Court's construction of signal interface. (*See id.* at 13) Hence, in Defendants' view, a theory of infringement that allows the signal interface to sit on the public telephone network must be barred because that theory would vitiate the requirement that the signal interface be located off the public telephone network. (*See id.* at 12-13)

United Access counters that the limited equivalency theory on which it relies does not eliminate the positional requirement of the signal interface. (*See* D.I. 190 at 20) United Access agrees that where the signal interface is located is an important aspect of the claims and suggests that its theory respects the requirement that the signal interface be placed some distance from the telephone exchange. (*See id.*) Under the theory United Access presents, the signal interface sits on the opposite end of the telephone network from the telephone exchange, but rather than sitting where the local network meets the public telephone network, it sits slightly upstream of that point on the public telephone network. (*See id.* at 21)

The Court agrees with Defendants that, regardless of the factual evidence that may be

---

[4]The parties' stipulation is materially different from that in *Ring & Pinion Service Inc. v. ARB Corp.*, 743 F.3d 831 (Fed. Cir. 2014), a stipulation that fully and finally resolved the issue of equivalence. Here, the stipulation is for a limited purpose, and expressly states that it "is not relevant to th[e] legal question" of claim vitiation. (D.I. 190 Ex. D at 2)

9

developed, no reasonable juror could find the differences between Defendants' products and the claimed invention to be insubstantial under the doctrine of equivalents theory on which United Access relies. This theory would eliminate the public/private distinction that the claimed invention embraces. The patent is replete with references to the public telephone network and makes clear that the claimed signal interface is not located on the public network. *See, e.g.*, '596 patent col. 8 ll. 9-13; col. 1 l. 62 - col. 2 l. 6; col. 4 ll. 53-55. This position was intentionally selected because, for instance, it prevents the signal interface "from creating violations of governmental regulations by conducting [certain signals] onto the public telephone network." Col. 48 ll. 41-43. Thus, the patentee elected to require the signal interface device to be located off the public telephone network, and United Access cannot, through the doctrine of equivalents, undo that choice. *See Decisioning.com, Inc. v. Federated Dep't Stores, Inc.*, 527 F.3d 1300, 1315 (Fed. Cir. 2008).

Accordingly, the Court will grant Defendant's motion for summary judgment of non-infringement under the doctrine of equivalents.

## III. CONCLUSION

The Court will grant Defendants' motion for summary judgment of non-infringement. An appropriate Order follows.