

Benjamin J. Schladweiler
Tel 302.661.7352; Fax 302.661.7163
schladweilerb@gtlaw.com

**VIA CM-ECF AND HAND DELIVERY**
The Honorable Leonard P. Stark
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801

December 18, 2019

**REDACTED
PUBLIC VERSION**

Re:   *United Access Techs., LLC v. AT&T, Inc.*, C.A. No. 11-338-LPS

AT&T moves to compel full responses to AT&T's Interrogatory Nos. 17-21 and 23.

1. **Interrogatory Nos. 17-21: Written Description**

During claim construction, in an attempt to preserve its infringement case, UAT broadened the scope of the asserted claims beyond the disclosure in the specification. On November 3, 2016 AT&T served Interrogatory Nos. 17-21 asking UAT to explain how the asserted patents support the claim scope UAT obtained and is asserting. Ex. 1. Specifically, Interrogatory Nos. 17 and 20 ask UAT to explain whether it contends each asserted claim covers any embodiment where non-telephone signals pass upstream of the signal interface towards or all the way to the telephone exchange. Interrogatory nos. 18, 19, and 21 ask UAT to explain where and how the specification discloses a system that passes non-telephone signals towards or to a telephone exchange.[1]

During claim construction, AT&T proposed a construction of "signal interface" that required the signal interface to "prevent[] all non-telephone signals from traveling upstream from the signal interface to the telephone exchange." D.I. 105 at 6. The asserted patents repeatedly state that the system contemplated by the inventors blocks all non-telephone signals—such as digital computer signals—from an upstream telephone exchange. *See, e.g.*, D.I. 86-1 at 33:16-17 ("Non-telephone signals are those not intended to communicate with local exchange 475."); *see also id.*, 57:21-24 ("[O]rdinary video signals from video cameras, digital signals from computers, and control signals from infrared transmitters . . . are referred to as non-telephone signals because they are not meant to communicate to local exchange 475."); *id.*, 48:47-52 ("Video and other non-telephone signals . . . are blocked from transmitting towards local exchange 475 by low pass filter 474b (FIG. 2)."); *id.*, Fig. 2 (showing low pass filters 474 in the signal interface).

In contrast, AT&T's systems *pass* non-telephone signals to the telephone exchange, i.e., the central office.[2] Had AT&T's construction prevailed, UAT could not have mapped the asserted claims to AT&T's system. UAT opposed AT&T's construction and argued that "[t]he feature identified by Defendants was claimed where intended, *see* Ex. A cls. 1, 20, and is not a feature of every embodiment using the invention." D.I. 95 at 7-8. UAT did not, however, identify any written-description support for a system that passes non-telephone signals to any telephone

---

[1] "Signal interface," "telephone exchange," "telephone signals," and "non-telephone signals" are all claim terms. The first two terms were construed by the Court, and the fourth is used in the Court's constructions of "external signals" and "external source of information." D.I. 106.

[2] The Court adopted AT&T's proposed construction of "telephone exchange" and noted that "Defendants argue that the term 'telephone exchange' refers to a central office that contains equipment for connecting and switching telephone lines." D.I. 105 at 10-11.

Chief Judge Leonard P. Stark                                           December 18, 2019
Page 2

exchange.

The Court agreed with UAT that the asserted claims were not inherently limited to a signal interface that blocked non-telephone signals from the telephone exchange, and construed the claims accordingly. D.I. 105 at 9. UAT must now explain how the written description supports the claim scope UAT obtained and is asserting, as "the construction of [signal interface] that must be supported by the written description . . . is the construction given by the district court." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1311 (Fed. Cir. 2008).

That explanation is exactly what Interrogatory Nos. 17-21 ask for, but UAT refuses to answer. Instead, UAT responded with several pages of groundless objections (Ex. 2), and later served additional responses raising additional objections still without answering the interrogatories (Ex. 7). AT&T has repeatedly explained to UAT the importance of these interrogatories to this case and has spent significant effort over several months trying to obtain UAT's positions. Exs. 3, 5, 8, and 10. AT&T therefore moves to compel full responses to these interrogatories.

### a. Interrogatory Nos. 17 and 20

These interrogatories ask UAT to explain whether it contends each asserted claim covers any (i.e., even one) embodiment where non-telephone signals pass upstream of the signal interface towards the telephone exchange (no. 17) or reach the telephone exchange (no. 20). UAT's amended responses refuse to answer, arguing that the interrogatories' inquiry "is not material to any embodiment with regard to the signal interface or to the scope of the claims with regard to the signal interface." Ex. 7 at 11, 25. But UAT argued during claim construction for broad claims that do not exclude embodiments in which non-telephone signals pass upstream of the signal interface towards the telephone exchange. UAT cannot argue that such claim scope is immaterial now that UAT must identify written description support for the scope it obtained and is asserting. AT&T requests that the Court compel responses to these interrogatories.

### b. Interrogatory Nos. 18, 19, and 21

These interrogatories ask UAT to explain where and how the specification provides written description support for a system that passes non-telephone signals upstream of a signal interface toward or to a telephone exchange.

In UAT's July 19, 2019 interrogatory responses, UAT stated that it "will interpret 'non-telephone signals' to mean signals not intended to communicate with the local exchange, as per, e.g., the '596 Patent at 33:16-17 ('Non-telephone signals are those not intended communicate with local exchange 475.')." Ex. 2 at 3. AT&T agreed and reiterated that signals not intended for the local exchange explicitly include digital computer signals, among others. Ex. 3 at 4.

However, UAT's amended responses to Interrogatory Nos. 17, 18, and 21 do not use the definition of "non-telephone signals" it proposed. Rather, UAT's circular response is that the specification has no description of "signals not intended to communicate with the '*telephone exchange*' passing upstream of the recited signal interface toward the 'telephone exchange.'" Ex. 7 at 16, 21, and 28. But it is not clear what UAT means by "signals not intended to communicate with *the telephone exchange*." In contrast, it is clear what signals not intended for *the patent's local exchange*—the signals UAT defined as "non-telephone signals"—are because the patent repeatedly identifies them. AT&T's interrogatories ask about non-telephone signals, and AT&T agreed to UAT's definition of non-telephone signals as signals not intended for the patent's local exchange because the patents identify those signals. UAT cannot discard its own definition now.

Chief Judge Leonard P. Stark                                          December 18, 2019
Page 3

AT&T asked UAT to confirm that the specification does not support passing signals not intended for the patent's local exchange towards or to the telephone exchange (Ex. 8 at 2), but UAT would not do so (Ex. 9 at 1-2). AT&T therefore requests that the Court order UAT to answer this question and explain any contention it has that the specification discloses a system in which any signals not intended for the patent's local exchange pass towards or to a telephone exchange.

## 2. **Interrogatory No. 23: Ensnarement**

The Federal Circuit cautions that DOE "is 'the exception . . . not the rule' and is not merely 'the second prong of every infringement charge, regularly available to extend protection beyond the scope of the claims.'" *Eli Lilly and Co. v. Hospira, Inc.*, 933 F.3d 1320, 1330 (Fed. Cir. 2019). However, UAT's infringement contentions attempt to address weaknesses in UAT's literal infringement case by raising at least *ten* different DOE theories for each asserted independent claim.

For each DOE theory, "[t]he burden of persuasion is on [UAT] to establish . . . that the asserted scope of equivalency would not ensnare the prior art." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d. 1314, 1323-24 (Fed. Cir. 2009). "[W]hen utilizing the hypothetical claim tool, that burden starts with proposing a proper hypothetical claim that only broadens the issued asserted claims." *Jang v. Boston Scientific Corp.*, 872 F.3d 1275, 1287 (Fed. Cir. 2017). Interrogatory No. 23 (Ex. 11 at 4) asks UAT to provide a hypothetical claim for each of its DOE theories and explain how such hypothetical claim does not ensnare the prior art.

UAT refuses to answer either request. Ex. 11 at 4-6. UAT objects to disclosing expert testimony, but UAT does not need an expert to provide a hypothetical claim for its own DOE theories. UAT also incorrectly argues that ensnarement is an affirmative defense that must be pled, but UAT has not provided any support for this proposition. Instead, UAT points to *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318 (Fed. Cir. 2000), which held that it is "an affirmative defense of the accused infringer to allege and *to show that it is practicing the prior art*." *Id.* at 1323 (emphasis added).[3] Indeed, UAT's interrogatory response ellipses out the portion of *Fiskars* explaining that the Defendant in that case "does *not* argue that a hypothetical claim embracing its device would not be patentable." *Id.* (emphasis added). In contrast, AT&T's interrogatory no. 23 asks UAT to explain why its DOE theories do not ensnare the prior art. Whether the accused systems practice the prior art is not at issue in this interrogatory.

UAT's interrogatory response was due on November 12. Expert discovery is well underway, and UAT still has not provided a response. AT&T requests that the Court order UAT to immediately provide responses for each of its DOE theories. In the alternative, the Court may find that UAT's failure to provide a timely response precludes UAT from asserting DOE in this case. *E.g.*, *Jang*, 872 F.3d at 1287 (If a patentee "fail[s] to submit a proper hypothetical claim for consideration, he [will be] unable to meet his burden of proving that his doctrine of equivalents theory did not ensnare the prior art."); *see also NLB Corp. v. PSI Pressure Systems LLC*, No. CV H-18-1090, 2019 WL 6039932, at *5 (S.D. Tex. Nov. 14, 2019) (granting SJ because "[patentee] has failed to propose a hypothetical claim in this case, and the time to do so has expired.").

---

[3] UAT also equates ensnarement with prosecution history estoppel (Ex. 11 at 5, fn. 1), but "prosecution history estoppel is not an affirmative defense." *Deep9 Corp. v. Barnes & Noble, Inc.*, 772 F. Supp. 2d 1349, 1351 (W.D. WA 2011) (citation omitted).

Chief Judge Leonard P. Stark  
Page 4

December 18, 2019

        Sincerely,

        */s/ Benjamin J. Schladweiler*

        Benjamin J. Schladweiler